IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA      )
                              )
vs.                           )   No. 1:15-CR-01889-JCH
                              )
RAYMOND MOYA                  )


TRANSCRIPT OF PROCEEDINGS

MOTION TO RECONSIDER TRIAL SETTING

October 5, 2016


BEFORE:  HONORABLE JUDGE JUDITH HERRERA
         UNITED STATES DISTRICT JUDGE



Proceedings reported by stenotype.

Transcript produced by computer-aided

transcription.


Paul Baca, Official Court Reporter

```
 1   A P P E A R A N C E S:

 2   FOR THE GOVERNMENT:   SEAN J. SULLIVAN
                          NICHOLAS JON GANJEI
 3                        Office of the U.S. Attorney
                          201 Third Street, Northwest #900
 4                        Albuquerque, New Mexico 87103
                          505-346-7274
 5
     FOR DEFENDANT:       JERRY DANIEL HERRERA
 6                        jd@jdherralaw.com
                          620 Roma Avenue, Northwest
 7                        Albuquerque, New Mexico 87102
                          505-262-1003
 8
                          AMY SIRIGNANO
 9                        amy@abqnmlaw.com
                          Law Office of Amy Sirignano PC
10                        20 First Plaza Center, Northwest,
                          #310
11                        Albuquerque, New Mexico 87102
                          505-242-2770
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           THE COURT:  Please be seated.

2           We are on the record in USA versus Moya,

3    15-CR-1889.

4           Could I have your appearances, please.

5           MR. SULLIVAN:  Sean Sullivan for the

6    United States.

7           MR. GANJEI:  Nick Ganjei for the

8    United States, Your Honor.

9           MR. HERRERA:  Jerry Herrera, along with Amy

10   Sirignano as co-counsel, on behalf of Raymond Moya.

11          THE COURT:  And Mr. Moya is also present.

12          MR. HERRERA:  He is present.

13          THE COURT:  All right.  Thank you.

14          I set this hearing to discuss the -- I

15   guess it's -- technically, it's a motion to

16   reconsider the November trial setting, but -- I guess

17   that's what it is, so that's what I wanted to take up

18   today.

19          Now I've reviewed the motion, and I've also

20   refreshed my recollection about our last hearing when

21   we talked about the November setting.  I don't know

22   if there's anything else you wanted to bring to the

23   Court's attention about the request, Mr. Sullivan.

24          MR. SULLIVAN:  Judge, I would just say a

25   couple of things --

1          THE COURT:  Okay.

2          MR. SULLIVAN:  -- of paramount importance

3    to the United States, and I submit should also be to

4    the Court, is that there's a necessary witness in

5    this case, a cooperating witness who is in jail, you

6    know, waiting for the outcome of this case.

7          THE COURT:  Uh-huh.

8          MR. SULLIVAN:  There's also family and many

9    members of the Albuquerque community who are looking

10   for justice in a case that's now more than five years

11   since the time of Cameron Weiss' death.  Those are

12   reasons to try this case sooner rather than later.

13         I would also point out, from the face of

14   the indictment, it's clear that the offense charged

15   in Count 2 is heroin distribution resulting in death.

16         You read that indictment, and know you're

17   going to to need a forensic pathologist and you're

18   going to to need a forensic toxicologist.

19         So the explanation of the delay and the

20   reason for further delay to retain these people and

21   have them do their work, I think we need to look at

22   as to why weren't those people brought on board right

23   after that indictment was referred, right after these

24   defense attorneys were assigned.

25         Some of the references in here are to

1    additional discovery materials.  We have complied

2    with Rule 16, we've complied with our constitutional

3    obligations.

4            And I invite the defense, if there's any

5    other materials that they really think they're

6    entitled to, to make a motion and cite to some legal

7    authority as to why they should get it.

8            Things -- particularly like Cameron Weiss'

9    medical records that aren't in our custody, those are

10   discoverable.  If they want them they can get them

11   themselves.

12           So November is a fine time to try this

13   case.  The indictment was returned, what, a year and

14   a half ago?  There's been sufficient time for the

15   defense to prepare adequately and we should go

16   forward in November.

17           THE COURT:  Mr. Herrera?

18           MR. HERRERA:  Judge, looking at this,

19   primarily our big problems -- the difficulty that we

20   had with Dr. Jimmie Valentine.  We -- we did struggle

21   to try to get dates with him, and it is almost an

22   insurmountable task sometimes to try and locate a

23   particular type of expert witness.

24           We are oftentimes constrained by cost.

25   Oftentimes they are out of state.  Their schedule is

1    such that it is just impossible to get them on board.

2    So we struggled with Dr. Valentine.

3          Secondarily, Sean references the delay in

4    the case.  This case wasn't indicted until May of

5    2015, so a lot of the five years that he references

6    is not our fault.  It's the government's fault for

7    waiting so long to bring the case.  So I really wish

8    that he would not reference that anymore.

9          We've got a delay, basically, of May 2015.

10   We're now October of 2016.  So what is that, about 16

11   months for the defense?  But he likes to say it's a

12   five-year delay.  It's not our fault.  It's the

13   government's fault.  I don't know why they waited so

14   long to bring the case.

15         We do have three witnesses we referenced in

16   our motion, Judge.  We talk about these conflicting

17   dates that they are available.  We do have Dr. Steven

18   Pike, that the Court referenced she knew, that the

19   Court knew.

20         But his schedule was that he is not

21   available in November.  That leaves -- we don't have

22   contiguous days.  The first time that we have any

23   availability for people to be testifying as expert

24   witnesses is January.  That's the best we can do.

25   That is just the absolute best we can do.

1          It's not a perfect world.  I agree with

2   Sean.  It would be ideal to pick up the phone, get an

3   expert witness and say, "Yes, let's go to trial next

4   month."

5          It doesn't isn't work that way in the real

6   world.  It doesn't work that way for the government.

7   The government may have 300 witnesses that they can

8   call.

9          We don't have that luxury on the defense.

10  It's difficult.

11         Secondarily, we still have discovery

12  issues, that we sent a letter to the government on,

13  that we don't have.  We think that there's some

14  critical documents that we would need.

15         Our toxicologist -- hopefully it will be

16  Dr. Pike -- to take a look at to render the

17  assessment as to cause of death.

18         We're trying to get this stuff, Your Honor.

19  We haven't seen it yet.

20         We did provide to the Court a proposed

21  motion schedule which references the combination of

22  Documents 58, 59, and 60 that we would blend

23  together -- we've blended together to try and see if

24  we can kind of streamline this a bit for the Court.

25         And the last thing, Judge.  I don't think

1   the Court's made a decision on the approval of

2   Dr. Pike.  We don't have the ability to hire him

3   until the Court makes the approval.

4        Is that correct?

5        MS. SIRIGNANO:  It's pending.  It's

6   pending.

7        MR. HERRERA:  It's still pending,

8   Your Honor.

9        THE COURT:  So you've already filed the

10  request?

11       MS. SIRIGNANO:  I did, Your Honor.

12       THE COURT:  Okay.

13       MR. HERRERA:  But we -- we've got him on

14  board available, as -- tentatively.  And I don't know

15  if that window in January is going to to close up.

16  He's already said that he can do it the second week

17  in January.

18       So we have three people that are expert

19  witnesses:  Janine Arvizu, Steven Pike, and William

20  Foote, that I think would be available in that

21  contiguous time frame in January.

22       THE COURT:  I'm trying to see what I may

23  have regarding retaining Dr. Pike.

24       MS. SIRIGNANO:  Your Honor, there was an

25  e-voucher request, and let me see if I can pull it up

1 here and I can get a date for you. It was two weeks

2 ago, I think, sometime.

3          THE COURT: Okay. Well, if you could pull

4 it up and get me that date, that would be helpful for

5 me.

6          Okay. Anything else?

7          MR. SULLIVAN: Your Honor, I would just

8 point out, as far as the experts go, that the

9 forensic pathologist over at OMI was able to render

10 an opinion, you know, a medically-proper opinion,

11 with the exact same records and exact same

12 information that these -- these experts have now had

13 for a while.

14          The same goes for the forensic toxicologist

15 labs in Pennsylvania.

16          If she had the information to rely on,

17 their experts have it. So I think that they are more

18 than capable of rendering an opinion based on the

19 information they have.

20          What they can't do, apparently, based on

21 that, is go on a fishing expedition.

22          So as far as what other discovery materials

23 that they want, I think they need to make a motion

24 for the Court and cite to some legal authority as to

25 why we have to give it to them.

1                    THE COURT:  All right.

2                    MS. SIRIGNANO:  Your Honor?

3                    THE COURT:  Yes.

4                    MS. SIRIGNANO:  I would like to just

5      briefly respond to that.

6                    You know the fishing expedition is not

7      ours.  It's the government's at this point.  I mean,

8      this is -- this is their response every time they

9      think that, you know, we're trying to get documents

10     that we need that's required just for due process and

11     for fairness.

12                   Back in April of this year I sent a 44

13     paragraph letter outlining the laboratory practices,

14     policies, and procedures discovery that our expert,

15     Janine Arvizu, requested for the private laboratory.

16                   And also, we're going to to need the same

17     documents for the DEA laboratory.

18                   And I'm sure everybody in the courtroom is

19     aware of the president and the white house's recent

20     publication of problems with forensic science and the

21     panel of experts and the recent report, as of two

22     weeks ago that they put out, recommending significant

23     improvements in the laboratory practices in the area

24     of forensic testing, the DNA testing chemistry, and

25     the like.

1       And so these documents, while the

2   government conveniently likes to say is not in the

3   possession and control of the government, contains

4   Brady material which we need, and also Rule 16

5   material that we need to properly defend our case.

6       And so while the government is saying that

7   we didn't provide any legal opinion or case law with

8   this request, I point to Document 60 and Exhibit C

9   with Document 60, which details the actual request

10  and the -- and the law on that, supporting that

11  request.

12      I'm happy to file another motion, Judge.

13  That's no problem.  And this time it will be a

14  straight Brady motion with specific law from the

15  10th Circuit that shows that we're entitled.

16  Additional law, the law that we've already provided,

17  shows how it's relevant, how it's discoverable, both

18  under Rule 16 and also Brady.

19      This is not the first time we've litigated

20  laboratory procedures, qualifications, proficiency

21  records, controls.  And they've been provided by the

22  government in the past.

23      So while the government says they don't

24  have it, I think it's their obligation at this point

25  to provide it to us.

1    THE COURT:  Well, let me address the motion

2    to reconsider the November trial setting.

3          You know, I know that the last time we were

4    together you asked for a January trial setting.  The

5    government opposed anything beyond November of 2016

6    because of the issues that were addressed earlier:

7    The cooperating witness and then the decedent's

8    family wanting -- wanting this matter tried.

9          And I know at the time you were talking

10   about scheduling issues and getting experts lined up

11   and so forth.

12         And I told you that I was going to to set

13   it in November.

14         And I told you that I wanted you to do what

15   you could to get these experts lined up and available

16   for November.

17         And I told you that I wanted to get this

18   case tried, if that's the direction we're going to.

19         So I guess I cannot say that I'm surprised

20   that you have problems in November, because that's

21   what you told me the last time we were together.  I

22   think I was just pushing for trying to get -- get it

23   moving.  So I can't say I was surprised to see the

24   motion to reconsider the November trial date, because

25   that's what you said to begin with.

1    So you know, I understand the issues about

2    your cooperating witness.

3    You know, I can't -- I have obligations

4    here to lots of different stakeholders.  I mean the

5    defendant, obviously, is on trial.

6    I have, certainly, sympathy for the family.

7    And I recognize this is a 2015 case, not a 2011 case.

8    But I understand -- I understand the

9    family's situation.  I'm sympathetic to that.

10   But you know, sometimes things take more

11   time.

12   The cooperating witness.  The Court

13   certainly has no control over what he was charged

14   with, what he pled to.  You know, that's not --

15   that's not an issue that involves where we are now.

16   I mean, I understand the cooperating witness.

17   I think you told us last time that his

18   sentence was complete, or soon to be complete.  And

19   so you know, I -- again, I'm sympathetic to that.

20   I'll do whatever I can to get this case tried as soon

21   as possible.

22   But I just feel like having been, I guess

23   forewarned that November would be next to impossible,

24   I was hoping that we could get it tried in November.

25   I understand that -- what the problems have

1    been, so I will grant the motion to reconsider the

2    November trial date, and I'll set it in January.

3                MR. SULLIVAN:  Your Honor, if I could just

4    propose this.

5                It seems like, based on our discussion

6    today, what the sticking point is is these defense

7    expert witnesses.

8                THE COURT:  Uh-huh.

9                MR. SULLIVAN:  One, their availability, but

10   also the materials that they're going to to be

11   allowed to consider in rendering an opinion.

12               I would ask, because it seems like the

13   defense, and Ms. Sirignano in particular, are

14   well-versed in the items that they want and what

15   legal authority there might be to support that, that

16   you set a motion deadline for one week from today for

17   them to make a formal motion to the Court for the

18   additional materials that they think they are

19   entitled to under the discovery rules and

20   constitutional obligations, because they've obviously

21   framed that issue up based on their letter before and

22   their representations to the Court.

23               And then set up a quick deadline for us to

24   reply to that, maybe a week later, so we can get that

25   issue resolved, exactly what the United States needs

1    to turn over and what it doesn't; what we have in our

2    possession, what we don't; what constitutes Brady

3    material, what doesn't.

4            And then once we do that, shortly after

5    that, set another deadline for Daubert motions so

6    that they can --

7            THE COURT:  Well, I did set a deadline for

8    Daubert motions, but it sounds like you need more

9    information before then.

10           Is that right?

11           MS. SIRIGNANO:  That's right, Your Honor.

12   Our experts can't render an opinion without the

13   records that we seek.

14           And we filed our -- what might be helpful

15   is I can file, in followup, additional briefing on

16   our sealed motion to compel discovery.

17           THE COURT:  So would that be a supplement

18   to Document 60 or what are you proposing?

19           MS. SIRIGNANO:  Yes, Your Honor.  I can do

20   that.

21           THE COURT:  So is that something you can do

22   in a week?

23           MS. SIRIGNANO:  So a week might be a little

24   bit difficult with Dr. Pike's schedule, because he's

25   requiring specific documents, as well as Mr. Arvizu.

1          And so if I could have a couple of weeks to

2    get with his schedule and then have an additional

3    filing, I can do that.

4          You know, as a suggestion for the

5    government, if they're worried about their

6    cooperating witness who has already pled, you know

7    what, Judge?  Under Rule 32 you could go ahead and

8    sentence him, and then post-testimony he could go

9    back to the Court and get a departure.  I mean, this

10   is an alternative.

11          I just mention it because this is, again,

12   something -- if there's a timing issue with him being

13   released from custody -- and I have talked to

14   Mr. Assed, who represents him -- then you know, this

15   is something that could alleviate this problem, as a

16   suggestion, Your Honor.

17          MR. SULLIVAN:  What I think would alleviate

18   the problem is if we figure out real quick what the

19   defense expert is going to to be allowed to consider.

20          And then shortly after that they render

21   their reports, and we can -- and then you know, we

22   can see whether there's a Daubert motion that needs

23   to be made.

24          It may be that one or more of these experts

25   doesn't have anything relevant to testify about, you

1    know.  We don't know.

2          But let's set a quick deadline for them to

3    spell out in a motion what they think they're

4    entitled to and the legal authority to support it.

5    I'd ask you, Your Honor, to make a ruling on that.

6    And then we can turn around relatively quickly.

7          After that they can present their reports

8    and we can see whether this is even going to to be

9    admissible testimony.

10          And that will keep us on track for a

11    January date.

12          THE COURT:  So it sounds to me like making

13    a request, or supplementing your request, is

14    appropriate.

15          But you know, I'm really interested in how

16    to get this thing done as quickly as possible.

17          You know I already set a Daubert motion

18    deadline for, I think, the 11th of this month.  It

19    sounds like that's not going to to happen.

20          I was looking to set a Daubert hearing in

21    early December with an eye toward, you know, probably

22    getting this case tried in the earlier part of

23    January.

24          And so much of that trial date has to be

25    backed up to accommodate the Daubert issues, should

1  there be any Daubert issues.

2       So we just need to get moving, get stuff

3  going to here as quickly as possible on whatever

4  additional information you need to bring to the

5  Court's attention.

6       So you said two weeks.  I mean, is it -- I

7  know the last time I tried to push you to an earlier

8  deadline it didn't really work out.  But I really

9  want to know what is a realistic as-soon-as-possible

10  deadline to get this supplement or new motion filed.

11       MS. SIRIGNANO:  Judge, as soon as we get

12  the funding request approved.

13       In anticipation of that, I recently

14  provided Dr. Pike the discovery.  He has it, but he

15  hasn't begun because -- for obvious reasons.

16       THE COURT:  Well, I'm going to to approve

17  the request.  I just need to find it and get it

18  approved.

19       MR. SULLIVAN:  The way I understand it,

20  though, Dr. Pike has already indicated to the defense

21  what he needs, right?  So we really don't need to get

22  into any --

23       THE COURT:  You know, I'm not going to to

24  bicker about all of this.  I just want to get the

25  motion filed.

1           MR. SULLIVAN:  Me too.

2           THE COURT:  So what can we do to get the

3    motion filed?  That's what I want.

4           I'm told that I need to approve Dr. Pike.

5           I'm telling you I'm going to to approve

6    him.  He will be paid.

7           So what else do we need to do to get this

8    rolling?

9           MS. SIRIGNANO:  I will file an addendum or

10   a supplement to this motion specifically requesting

11   additional case law, the documents that we need from

12   the government.

13          And then it might -- I think it's going to

14   to require a hearing, Your Honor, for discovery

15   powers.

16          THE COURT:  Well, it may, but I need the

17   motion first.  When can I get the motion?

18          MS. SIRIGNANO:  I can get it to you in a

19   week, Judge.

20          THE COURT:  In a week?  Okay.  All right.

21          And you'll respond in a week?

22          MR. SULLIVAN:  Yes, Your Honor.

23          THE COURT:  All right.  So -- okay.

24          So a week from today is the 12th, and a

25   week after that is the 19th.  So --

1          MS. SIRIGNANO:  Your Honor, if I could

2     be -- can I have until Friday, the 14th?  Because I

3     am -- Monday is a holiday, and I'm out of town on

4     Friday.

5          THE COURT:  Okay.  All right.

6          So Friday the 14th.

7          MS. SIRIGNANO:  Yes, Your Honor.

8          THE COURT:  And then Friday the 21st for

9     your response.

10          And I would expect that you-all can work

11     all of this out.  But if you can't, then certainly

12     the Court will hold a hearing probably, if not late

13     October, then early November.  But I'll have to talk

14     with my courtroom deputy to get you a specific date.

15          But I am going to to keep the late

16     October/early November time frame in mind.

17          And then there will need to be whatever

18     expert disclosers that are necessary.  We can set up

19     a Daubert hearing if necessary.  So...

20          (Discussion off the record.)

21          THE COURT:  So your expert's available --

22          MR. HERRERA:  Judge, we were just looking

23     at that, and I think in my motion I referenced this

24     doctor, and he tells me, "This is when I'm not

25     available."

1          So he references that he's available

2     primarily the second week in January, which is

3     January 9.  He had not available the 12th.

4          Amy is telling me he's available from the

5     9th through the 13th, which is the whole week --

6     whole second week of January.

7          Dr. Foote is available that second week.

8          And Janine Arvizu is available the whole

9     month.

10          THE COURT:  Okay.

11          MR. HERRERA:  But it looks like that second

12     week is the one for Dr. Pike.

13          THE COURT:  All right.  So the 9th.

14          MR. HERRERA:  That's correct.

15          THE COURT:  All right.  Well, let's --

16     let's put January 9 as the trial -- new trial date.

17     And I'll have my courtroom deputy send out a notice.

18          All right.  So I will maybe do a text only

19     order on these deadlines on the supplement and the

20     response or -- I'm calling it a supplement, but it's

21     either a new motion or supplement to succeed,

22     whatever.

23          MS. SIRIGNANO:  Thank you, Your Honor.

24          THE COURT:  All right.

25          MR. HERRERA:  Judge, also, we'll get ahold

1  of Dr. Pike today and advise him of what the Court

2  has indicated.

3            THE COURT:  Yes.

4            MR. HERRERA:  And tell him, also, that week

5  that he said he would be available, and we'll do the

6  same thing for Ms. Arvizu and for Dr. Foote.

7            THE COURT:  Very good.

8            Yes?

9            MS. SIRIGNANO:  Your Honor, just for

10 scheduling purposes, to make things easier for our

11 experts that are flying in, can the government give

12 us an idea of how many days their case-in-chief might

13 last?

14           MR. SULLIVAN:  It's always hard to say, but

15 I would think three, four days.

16           THE COURT:  For your case-in-chief?

17           MR. SULLIVAN:  Yes.

18           THE COURT:  All right.  Well, I generally

19 do my best to accommodate witnesses.  So if -- if

20 witnesses have issues that require them to be taken

21 out of order I'm usually agreeable to that, and so

22 we'll find a way to make it work.

23           MS. SIRIGNANO:  Thank you, Your Honor.

24           THE COURT:  All right?

25           Well, thank you-all.

1          We'll be in recess.

2          (Proceedings concluded at 2:10 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATION

2

3    I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.  I further certify that the transcript fees

6    and format comply with those prescribed by the Court

7    and the Judicial Conference of the United States.

8

9    Date:  October 6, 2016

10

11                    _____

                      PAUL BACA, RPR, CCR
12                    Certified Court Reporter #112
                      License Expires:  12-31-16
13

14

15

16

17

18

19

20

21

22

23

24

25