IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RAYMOND MOYA, )<br>)<br>Defendant. ) | Cr. No. 15-1889 JCH |

**THE UNITED STATES' MOTION FOR PRETRIAL RULING ON ADMISSIBILITY OF AUDIO RECORDING CONTAINING ADMISSIONS BY DEFENDANT**

The United States hereby moves, pursuant to Rule 104 of the Federal Rules of Evidence, for a pretrial ruling on the admissibility of an audio recording of a telephone conversation between the defendant, Raymond Moya (hereinafter, "Defendant"), and his girlfriend, Briana Montano, while Defendant was incarcerated at the Torrance County Detention Facility on January 5, 2013.[1]  In support of this motion, the United States sets forth the following:

Relevant Facts

On or about August 7, 2011, Cameron Weiss ("Cameron") was released from the Metropolitan Detention Center in Albuquerque.  Shortly before Cameron's release, his friend and fellow inmate, Joseph Dyson ("Dyson"), provided him with a note listing contact information for possible sources of heroin.  Both Cameron and Dyson were heroin addicts

---

[1] Defendant received a copy of this recording as discovery on or about September 1, 2015.  The United States included this recording as item number 41 on its exhibit list (Doc. 170), filed on December 15, 2016.

at that time. In the note, Dyson identified himself as "Black Joe" and listed one potential heroin source as "Riot," which is Defendant's nickname.

On the morning of August 13, 2011, Cameron's mother, Jennifer, found him dead from a heroin overdose at their family's home. Weiss had previously attended La Cueva High School and struggled with heroin addiction for approximately two years.

During an investigation following Cameron's death, Dyson informed investigators that he provided heroin to Cameron a few hours before he passed away. Dyson has further informed investigators that Dyson obtained that heroin from Defendant. According to various witnesses, this was the only heroin used by Cameron in the final 24 hours of his life.

On January 5, 2013, at approximately 2:36 p.m., Defendant called Montano from the Torrance County Detention Facility, where he was incarcerated on an unrelated federal case.[2] Defendant and Montano then proceeded to have a phone conversation about the recent arrest of Dyson, who they referred to as "Black Joe." Montano informed Defendant that she had found a news story on the internet about "Black Joe" selling a "deadly dose of heroin" to Weiss, who she described as "some 18-year-old little white boy from La Cueva." Montano misinformed Defendant that Weiss's occurred in "April[,]" when it actually occurred in August. Defendant responded, "Wow!" Montano asked Defendant, "Were you even talking to Black Joe then? I know you hadn't talked to him in forever. I remember he was being all [dishonest], like taking people's money and shit." Defendant

---

[2] The United States is providing a copy of this recording to the Court and defense counsel by email.

then told Montano, "No, I don't know.  I don't even talk to him.  I don't even talk to him, babe."  Later in the conversation, Defendant and Montano discuss the possibility of Dyson implicating Defendant in the sale of the heroin that caused Cameron's death.  Montano stated to Defendant, "Like it'd be different if somebody saw you selling to that boy or something but I mean, Black Joe was all fucked up.  You know what I mean?  He's just gonna blame anyone he can.  Y, that's the way he is."  Defendant then responded, "Yeah."

Applicable Law

Pursuant to Fed. R. Evid. 104(a), "The court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege."  Further, "The court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires."  *Id*.

In the instant motion, the United States seeks the Court's permission to offer a recording of the above-described telephone conversation between Defendant and Montano as evidence at trial.  Defendant's statements during the conversation are admissible as an opposing party's statements.  *See* Fed. R. Evid. 801(d)(2)(A).  These statements – which establish that Defendant had a prior drug-related relationship with Dyson a/k/a "Black Joe" - are relevant and highly probative of Defendant's knowing and intentional distribution of heroin.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]")  In contrast, the danger of unfair prejudice in admitting Defendant's statements as evidence is minimal.  *See id*.  There is no legitimate reason for concern that admission of this evidence would cause the jury to return a verdict on an emotional basis or otherwise tend to affect the jury's

attitude toward a particular matter. *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999).

The United States intends to authenticate this recording by establishing chain of custody through a custodian of records from the Torrance County Detention Facility. *See e.g.*, *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1569-70 (10th Cir. 1993). It is proper to consider preliminary questions of admissibility of evidence outside the presence of the jury, see Fed. R. Evid. 104(c), and evidence to establish authenticity is not considered testimonial, *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011). Resolving the issue of the admissibility of this recording prior to trial will save the jury's time and reduce the length of the evidentiary portion of trial.

## Conclusion

For the foregoing reasons, the United States motion should be granted.

Respectfully submitted,

James D. Tierney
Acting United States Attorney

*Electronically filed on 03/14/17*

SEAN J. SULLIVAN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that I filed
the foregoing pleading
electronically through the

CM/ECF system which caused counsel for defendant to be served by electronic means.

       /s/
SEAN J. SULLIVAN
Assistant U.S. Attorney