IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                    Cr. No.  15-1889 JCH

RAYMOND MOYA,

        Defendant.

**SEALED MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two motions in limine as discussed herein.

**I.**     **The United States' Motion in Limine to Prohibit Improper, Speculative Argument Regarding Government Laboratories [Doc. 210]**

The Government asks for an order prohibiting Moya, his expert Janine Arvizu, and his lawyers from arguing that any negative inference should be drawn from the fact that he does not possess evidence regarding government laboratories, or that the government refused to produce such evidence.

    **A.**     **Prior Motions and Orders Regarding Discovery and Arvizu**

Earlier in this case, the Court denied Moya's motion to compel the government to produce an extensive list of documents regarding National Medical Services ("NMS") Laboratory, DEA Laboratory, and Office of Medical Examiner standard operating procedures, quality manuals, audit reports, validation/verification records, instrument calibration records, chain of custody documents, etc. *See* Doc. 125 at 28-29; Doc. 122; Doc. 60 (all filed under seal). These requests were numerous and quite detailed. Because the U.S. Attorney's Office often has disclosed these types of laboratory documents in other cases in the District of New Mexico, this was an issue not

often litigated in this district. However, the Court concluded that Moya had not shown that these items are exculpatory, as required by *Brady*, or that their disclosure is otherwise required by *Giglio* or Rule 16. Doc. 125 at 28-29. As a result, the Government moved [Doc. 157] to exclude the testimony of defense expert Janine Arvizu, who was retained to review the results of forensic testing conducted by the Drug Enforcement Administration ("DEA") and NMS laboratories. Arvizu reviewed the laboratory analysis of a substance found on a syringe taken from Cameron Weiss's bedroom following his death, which the DEA concluded contained cocaine residue. Arvizu also reviewed the results of toxicology analysis performed by NMS on blood and urine samples taken from Weiss's body shortly after his death.

According to the Government, Arvizu's expert report stated that she was unable to conduct a "comprehensive independent assessment" of this forensic testing because she had not been given sufficient discovery materials, i.e., the laboratory documents that were the subject of the motion to compel. In its motion to exclude Arvizu from testifying, the Government argued that because Arvizu admitted she did not render an adequate assessment of the forensic testing in this case, she should not be permitted to testify because it would confuse the issues of the case, mislead the jury, and waste time. The Government also argued Moya had failed to show that Arvizu, who is not a forensic chemist, has the "knowledge, skill, experience, training, or education" to render a competent opinion or that it would be based on "sufficient facts and data[,] . . . the product of reliable principles and methods[,] and involve the reliable application of "the principles and methods to the facts of th[is] case." Finally, the Government claimed that a *Daubert* hearing was unnecessary. Doc. 157.

In response [Doc. 167], Moya argued that the Government had mischaracterized the contents of Arvizu's report and that she could analyze the validity and reliability of the testing

with the limited documentation made available to her. Arvizu's report does state that the laboratory documents produced by the Government were inadequate for an independent party to assess the scientific validity and reliability of the results reported by the laboratories. However, in her report Arvizu also concluded that based on the documents she reviewed, the reference material handling practices at NMS laboratory were not acceptable, and there were significant calibration problems for opiates and cannabinoids. According to Moya, Arvizu criticized the reliability of both the DEA and NMS results based on the laboratory documents that the Government produced. Moya argued that Arvizu should be permitted to testify regarding her opinions.

On January 3, 2017[1] the Court issued a Memorandum Opinion and Order [Doc. 184][2] in which it declined to exclude Arvizu from testifying at trial. Having concluded that Arvizu's report [Doc. 139-2] contained opinions regarding the reliability of the DEA and NMS laboratory results that might be admissible, the Court ruled that Arvizu would be "permitted to testify, subject to laying the proper foundation and subject to the applicable Federal Rules of Evidence." Doc. 184 at 2. The Court did not conclude that any portion of Arvizu's testimony should be either excluded or admitted; instead, the Court concluded that it was possible that at least some portion of Arvizu's testimony would be admissible if Moya could lay the proper foundation. *Id*.

### B.     The Current Motion Regarding Government Laboratories [Doc. 210]

---

[1] Moya filed his response to the motion to compel on December 15, 2016. [Doc. 167] At that time the trial had been set for January 9, 2017. A significant amount of the intervening time between the filing of Moya's response and the trial setting was taken up with an aborted attempt by the parties to reach a plea (see docket), the Court's holiday schedule, and efforts to address the numerous other pretrial motions filed by the parties.

[2] The January 3, 2017 order addressed nine pretrial motions, including the Government's motion concerning Arvizu.

Now, the Government raises the issue of Arvizu's testimony for a second time. In its motion in limine [Doc. 210], the Government asks for an order prohibiting Moya, his lawyers, and Arvizu from arguing at trial that any negative inference should be drawn from the fact that the Government did not disclose certain evidence pertaining to government laboratories. The Government contends that Moya has "signaled" that he "intends to pursue testimony and argument based on [his] lack of evidence on a topic." Citing Tenth Circuit Criminal Pattern Jury Instructions 1.06 and 1.07, the Government argues that Arvizu and defense counsel may not testify or make any argument based on speculation regarding what might be found in the laboratory documents that the Government refused to produce because the jury may consider only evidence admitted by the court.

The Court agrees with the Government in part. Arvizu will not be permitted to speculate as to what might be contained in laboratory documents that the Government did not produce and which the Court declined to compel it to produce. Furthermore, the defense may not draw conclusions for the jury about what that non-production might mean about the Government's laboratory results. Further, the Court agrees with the Government that Moya is not entitled to a negative inference based on the non-production of the laboratory documents, as there is no indication that the Government has destroyed any evidence in bad faith.

On the other hand, the Court rejects the Government's request that it reconsider its prior order [Doc. 184] and rule that Arvizu may not testify at trial at all. It appears that the Government is arguing that because it declined to produce its laboratories' standard operating procedures, quality manual, audit reports, validation/verification records, instrument calibration records, and chain of custody documents, then Arvizu may not testify as to the reliability of the laboratories' results because—due to the Government's own non-disclosure—she lacks complete information.

4

The Court will not countenance this argument, in which the Government seeks to use its non-disclosure as both a shield and a sword. Arvizu may testify to her opinions that are based on the documents that the Government did produce. In addition, the Government appears to be under the mistaken impression that because it does not prohibit Arvizu's testimony altogether, the order permits Arvizu "to testify about documents she has not seen and not reviewed." Doc. 210 at 5. Instead, the Court's order permits Arvizu to testify after a proper foundation has been laid. Thus, she may testify regarding her opinions based on the laboratory documents that the Government did produce, provided that all the requirements of Rule 702 have been satisfied.

## II.     Defendant's Motion in Limine to Prohibit Any Mention or Reference by Laboratory Examiners Regarding Laboratory Accreditation [Doc. 240]

Defendant moves the Court for an order prohibiting any government laboratory examiner from mentioning or referencing their laboratory's accreditation. These include Dr. Sam Andrews from the New Mexico Office of the Medical Examiner, Dr. Laura Labay from NMS Laboratories, and James Iwamoto from the DEA Laboratory in Dallas, Texas. As grounds for the motion, Defendant relies upon the International Organization for Standardization document ISO/IEC 17011, "Conformity assessment—General requirements for accreditation bodies accrediting conformity assessment bodies," Doc. 243-1. According to Moya, this standard "prohibits an accredited laboratory from even implying that the laboratory's methods or test results have been approved by their accrediting agency. Accreditation to the ISO 17025 international standard means that a laboratory has been found to have quality systems that comply with the standard; it does not represent approval of the laboratory's testing procedures and results." Doc. 240 at 2 (referencing Doc. 243-1). Defendant does not cite to any page or section of this 28-page document in support of his position. The closest relevant section that the Court can find is Section 8.3.2(f), Doc. 243-1

5

at 26, which states that the fact of accreditation cannot "be used to imply that a product, process, system or person is approved by the accreditation body." Defendant cites no Federal Rule of Evidence or caselaw in support of his argument.

The Court will deny the motion in limine. Assuming that a Government witness has personal knowledge regarding laboratory accreditation, the witness may testify to that fact because it is relevant, and Defendant has not made any showing that the evidence should be excluded under Rule 403 or any other Federal Rule of Evidence. If Defendant wishes to challenge the significance or weight of such evidence, he may do so through cross examination.

**IT IS THEREFORE ORDERED** that *The United States' Motion in Limine to Prohibit Improper, Speculative Argument Regarding Government Laboratories* **[Doc. 210]** is **GRANTED IN PART and DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Prohibit Any Mention or Reference by Laboratory Examiners Regarding Laboratory Accreditation* **[Doc. 240]** is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**