IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                               Cr. No. 15-1889 JCH

RAYMOND MOYA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on pretrial motions as discussed herein. This case is set for jury selection and trial on May 6, 2019.

## DISCUSSION

### I. MOTIONS RELATING TO DR. SAM ANDREWS [Docs. 312 and 322]

On April 19, 2019, the Government filed its *Motion to Exclude Evidence, Cross-Examination, and Other Information About Irrelevant and Unfairly Prejudicial Matters* [Doc. 312]. In that motion, the Government argues that the Court should exclude all evidence and cross examination regarding unproven allegations about Andrews in two civil lawsuits filed against him. One case involves alleged mishandling of human remains, the other alleged tortious interference with an employment relationship. The Government argues that the allegations in the two lawsuits are irrelevant to the crimes charged in this case, do not involve dishonesty (and therefore do not make the allegations usable for cross examination under Rule 608), and should be excluded under Rule 403.

The Defendant has not responded to the Government's motion. Instead, on April 26, 2019, Defendant filed his *Motion to Exclude the Expert Testimony of Dr. Sam Andrews* [Doc. 322].

Defendant argues that the Court should prohibit Dr. Sam Andrews, the medical examiner and forensic pathologist who performed the autopsy on the alleged victim in this case, from testifying because his testimony is unreliable. Defendant cites two pending civil lawsuits that have been filed against Andrews, as well as two past cases in which Andrews has changed his testimony or altered his conclusions as to cause of death. Defendant also argues that the Government's disclosure of this impeachment/*Giglio* evidence on April 19, 2019 was untimely. With regard to his work on this case, Defendant contends that Andrews improperly delayed in obtaining blood samples from the decedent, which impacted the reliability and accuracy of the toxicology testing. Defendant further argues that he is entitled to a pretrial *Daubert* hearing regarding Andrews' methodology and conclusions because "his opinion is not based on the proper application of science in his particular field [and] he did not have sufficient facts or data upon which to base his opinion."

On April 29, 2019, the Government filed its response [Doc. 327]. The Government argues that Defendant's arguments go to the weight that the jury might choose to give Andrews' opinion, but are insufficient to preclude him from testifying altogether. It contends that Defendant will have an opportunity to cross-examine Andrews about his medical opinions at trial, at which point it can ask him about the lapse of time between the decedent's death and the taking of his blood sample. The Government also points out that the pending investigations and civil lawsuits against Andrews remain unresolved, and at the moment they remain mere accusations rather than any demonstrated instances of untruthfulness or dishonesty. Finally, the Government argues that it has known about "issues" with Andrews since February 20, 2019, and that the detail and breadth of information about him contained in his motion (along with the testimony of his own expert, Dr. Pike) shows that rather than being prejudiced, Defendant is well prepared to defend against Andrews' testimony at trial.

The Court concludes that Dr. Andrews will be permitted to testify. The Defendant has failed to show that his testimony should be excluded. However, Defendant will be permitted to cross examine Andrews about the extrinsic matters raised in these motions *provided that he can first show that they are admissible under Rule 608 or another Rule of Evidence*. The Court will make that determination, if necessary, at trial. If there is no basis for the admission of this evidence under one of the Federal Rules of Evidence, the Court would conclude that it also should be excluded under Rule 403, as it is not directly relevant to Andrews' work in this case and any probative value would be substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Thus, the Court will provisionally grant the Government's *Motion to Exclude Evidence, Cross-Examination, and Other Information About Irrelevant and Unfairly Prejudicial Matters* [Doc. 312], subject to Defendant's ability to demonstrate at trial that the evidence is admissible. The Court will deny Defendant's *Motion to Exclude the Expert Testimony of Dr. Sam Andrews* [Doc. 322].

## II. MOTIONS RELATING TO EVIDENCE STEMMING FROM BLOOD AND URINE SAMPLES [Docs. 326 and 328]

In his motion in limine to exclude evidence regarding blood and urine samples [Doc. 326], filed April 28, 2019 (just one week prior to trial), Defendant argues that as a result of the passage of approximately 48 hours between the decedent's death and the taking of his blood and urine samples, that evidence should be excluded at trial. Defendant argues that Government witness Dr. Laura Labay, forensic toxicologist, failed to consider this delay when she opined that the decedent died solely from heroin intoxication. He contends that the blood and urine taken from the decedent "is not representative of the blood and urine in his system at the time he was pronounced dead,"

and therefore is "not relevant and reliable evidence." Doc 326 at 4. Thus, he asserts that the evidence should be excluded under Rule 403 because the danger of unfair prejudice to him substantially outweighs its probative value. Second, Defendant argues that the evidence should be suppressed under *Arizona v. Youngblood*, 488 U.S. 51 (1988) and *California v. Trombetta*, 467 U.S. 479 (1984). He argues that by delaying the collection of decedent's blood and urine, the Government essentially destroyed exculpatory evidence, and the Defendant is unable to "obtain comparable evidence by other reasonably available means." Doc. 326 at 7.

The Government did not file a response. Instead, April 29, 2019, the Government filed its *Motion to Strike Untimely Motion to Exclude or Suppress All Toxicology Evidence* [Doc. 328]. It points out that Defendant's motion is untimely and that he has failed to show good cause for the delay. Defendant has not filed a response.

The Court agrees with the Government for substantially all the reasons set forth in the Government's motion. The Government produced the toxicology report, autopsy report, and Dr. Labay's report to Defendant no later than February of 2016. Defendant's own expert, Dr. Pike, produced his report on December 12, 2016. The applicable motions deadline was ten working days before the April 3, 2017 trial setting. Yet, despite at that time having all the necessary information to file his motion, Defendant did not do so. In February of 2019, after the case was remanded from the Tenth Circuit, Defendant moved to extend the motions deadline but failed to give the Court any substantive reason to do so. *See* Doc. 279. And now, Defendant files his current motion without acknowledging that it is late or showing any good cause for the delay.

Accordingly, the Court will grant the Government's motion to strike Defendant's combined motion in limine and motion to suppress.

**III.     GOVERNMENT'S MOTION TO QUASH SUBPOENA [Doc. 298]**

The Government asks the Court to quash Rule 17 trial subpoenas that Defendant obtained for the custodian of records at NMS Labs on February 26 and 28, 2019. On March 28, 2019, NMS Labs provided at least some records ahead of trial in response to the subpoenas. In its motion, the Government complains that the subpoenas are improper because they requested documents from NMS Labs, a private entity, that the Court declined to compel the Government to produce. The Government characterizes the subpoena as improper use of Rule 17 as a discovery tool and a "fishing expedition." Doc. 298 at 4.

In response [Doc. 311], Defendant contends that the Government lacks standing to challenge the subpoenas to a third party, who did not move to quash the subpoenas but instead provided documents to Defendant in response to the subpoenas, rendering the entire issue moot. Then today, May 3, 2019, the Government filed an affidavait from Dr. Laura Labay from NMS Labs in which she avers that the document requests contained in the subpoena are overbroad and unreasonably burdensome. [Docs. 338 and 338-1] The Court will construe Dr. Labay's affidavit as a motion to quash the subpoena.

The Court will deny both the Government's and NMS Lab's motions to quash. First, the Court is unconvinced by the Government's argument in its reply [Doc. 314] that it has standing to move to quash the subpoenas. Second, the Court agrees that the issue is moot because (1) NMS Labs has already produced at least some of the documents, and (2) if the Defendant had sought approval to serve the Rule 17 subpoenas, the Court would have given that approval. Third, NMS Labs' motion to quash is untimely. The record reflects that NMS Labs received the subpoenas two months ago. But rather than object immediately, NMS Labs actually responded to the subpoena,

at least in part, and then sat on its hands until the last business day before trial was set to begin. Under these circumstances, the motion by NMS Labs is untimely and also will be denied.

**IV.     GOVERNMENT'S OBJECTIONS TO WITNESS
         DR. SATISH CHUNDRU [Doc. 313][1]**

The Government objects to Defendant's expert witness, Dr. Satish Chundru, D.O. on the grounds that Defendant did not give notice of this expert in a timely fashion. Defendant first gave notice of Dr. Chundru's proposed testimony on April 3, 2019, *see* Doc. 295, approximately one month before the May 6, 2019 trial date.[2] As noted above, in an Order entered on March 5, 2019 [Doc. 284], the Court had denied Defendant's request to extend the expert witness disclosure deadlines because Defendant failed to adequately explain to the Court the basis for his request. At least twice before, the parties had an opportunity to file all the necessary pretrial motions before the trial was postponed; in both cases, those postponements occurred mere days before trial was set to begin. In light of that previous extensive pretrial discovery and motion practice, the Court concluded that in the absence of a showing by the parties, there was no need for yet another round of pretrial deadlines. *Daubert* motions were required to be fully briefed before the dispositive motion deadline, and the parties' latest expert witness disclosures took place in December of 2016. Thus, Defendant's disclosure of Chundru one month ago was untimely under this Court's scheduling orders.

---

[1] The Government also raises an objection to another defense witness, Charles "Ted" Asbury. Based on the motion and Defendant's response, it is not clear what Mr. Asbury's testimony will be or the nature of the Government's objection. Thus, the Court will not address the issue at this time.
[2] On April 15, 2019, Defendant listed Dr. Chundru on his *Second Witness List for Trial* [Doc. 304]. The Government filed its *Objections to Listed Defense Witnesses* [Doc 313] on April 19, 2019. On April 22, 2019, the Defendant filed his response [Doc. 316], and on April 27, 2019, the Government replied. Doc. 324. Trial is set to begin May 6, 2019.

In *United States v. Wicker*, 848 F.2d 1059 (10th Cir. 1988), the Tenth Circuit set forth three factors that a district court should consider in determining the appropriate sanction for a Rule 16[3] violation: (1) the reason for the delay, including whether the non-compliant party acted in bad faith; (2) the extent of prejudice to the party that sought the disclosure; and (3) "the feasibility of curing the prejudice with a continuance." *Id*. at 1061. The court also noted that "these three factors should merely guide the district court in its consideration of sanctions; they are not intended to dictate the bounds of the court's discretion." *Id*. Thus, for example, it may be appropriate for a district court "to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the [party entitled to the disclosure] may not be prejudiced." *Id*.

With regard to the first *Wicker* factor, the Court concludes that Defendant has failed to provide an adequate reason for his delay in giving notice of Dr. Chundru's testimony. Defendant contends that his late notice stems from the fact that the Government only recently disclosed impeachment and *Giglio* information regarding Dr. Andrews, and that as a medical examiner Dr. Chundru's testimony is necessary in light of that new information. *See* Doc. 316. The Court is unpersuaded by this argument. According to his report, Dr. Chundru is not going to testify regarding the newly disclosed allegations against Dr. Andrews; rather, he is going to dispute Dr. Andrews' substantive conclusions about the cause of death of the decedent. However, Defendant possessed all the information he needed regarding Dr. Andrews' methodology and conclusions— and therefore all the information he needed to determine whether he wanted to retain Dr.

---

[3] Fed. R. Crim. Pro. 16(b)(1)(C) sets forth a defendant's obligations regarding disclosure of his expert witnesses.

Chundru—in 2016. Indeed, Defendant managed to obtain reports from both Dr. Labay and Dr. Pike that year. Therefore, the first *Wicker* factor weighs in favor of exclusion.

The second *Wicker* factor, the extent of prejudice to the Government, also weighs in favor of exclusion. Both parties agree that a *Daubert* hearing would be necessary before Dr. Chundru's testimony. This is true, in part, because Dr. Chundru's report states that Dr. Andrews' conclusions ignore "a lot of literature" without actually identifying that literature. Further, Dr. Chundru's report does not disclose the reports or articles on which he relied in reaching his conclusions. However, this issue regarding Dr. Chundru was only fully briefed a few days ago on April 27, 2019—approximately one week before the May 6, 2019 trial. Thus, a *Daubert* hearing would be necessary for the Government to test the admissibility of Dr. Chundru's testimony, but due to Defendant's late disclosure, there is simply no time. Without the opportunity to cross examine Dr. Chundru at a Daubert hearing before trial, the Government would be prejudiced.

Finally, the Court finds that it would not be feasible to cure the prejudice with a continuance. Scheduling the trial in this case has been extremely challenging due to the number of witnesses, the complexity of expert witness schedules, and the overburdened nature of the Court's docket. Trial in this case has been postponed at the last minute several times before for various reasons, and the case is now quite old. As the Government correctly noted, due to the shortage of Article III judges in the District of New Mexico, in combination with the high volume of cases pending here, it would likely be many months before the Court could reschedule the trial. Furthermore, neither the Government nor the Defendant has actually asked for a continuance in order to address the issue of Dr. Chundru. Thus, this third *Wicker* factor also weighs in favor of exclusion of Dr. Chundru.

For all the foregoing reasons, the Court concludes that Dr. Chundru will not be permitted to testify at trial.

**IT IS THEREFORE ORDERED** that:

(1) The Government's *Motion to Exclude Evidence, Cross-Examination, and Other Information About Irrelevant and Unfairly Prejudicial Matters* [Doc. 312] is **GRANTED** with the proviso discussed herein;

(2) Defendant's *Motion to Exclude the Expert Testimony of Dr. Sam Andrews* [Doc. 322] is **DENIED**;

(3) the Government's *Motion to Strike Untimely Motion to Exclude or Suppress All Toxicology Evidence* [Doc. 328] is **GRANTED**;

(4) Defendant's motion in limine to exclude evidence regarding blood and urine samples [Doc. 326] is hereby **STRICKEN** as untimely;

(5) the Government's Motion to Quash Subpoena [Doc. 298] is **DENIED**; and

(6) The Government's Objection to Defense Witness Satish Chundru [Doc. 313] is **SUSTAINED**.

_____
**UNITED STATES DISTRICT JUDGE**